[Cite as *State v. Gaffin*, 2019-Ohio-291.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO                               :

    Plaintiff-Appellee,                  :            Case No. 17CA1057

v.                                          :

                                                DECISION AND
KEVIN GAFFIN,                               :            JUDGMENT ENTRY

    Defendant-Appellant.                 :            RELEASED: 01/30/2019

_____

APPEARANCES:

William R. Gallagher and Hal R. Arenstein, Arenstein & Gallagher, Cincinnati, Ohio, and Elizabeth Conkin, Of Counsel, for appellant.

D. Vincent Faris, Clermont County Prosecuting Attorney, and Nick Horton, Scott O'Reilly, and Darren Miller, Assistant Prosecuting Attorneys, Batavia, Ohio, for appellee.

_____

Hoover, J.

{¶1}    Defendant-appellant, Kevin Gaffin ("Gaffin"), appeals the judgment of the Adams County Court of Common Pleas, which dismissed his petition for postconviction relief; convicted him of three counts of rape, three counts of sexual battery, and one count of felonious assault; and sentenced him to life in prison without the possibility of parole. On appeal, Gaffin claims that the trial court abused its discretion in dismissing his petition for postconviction relief without an evidentiary hearing after he provided sufficient credible evidence to demonstrate ineffective assistance of counsel. Specifically, Gaffin argues that the trial court should have afforded his affidavit due deference, found that all of the information contained in the attached affidavits was admissible, and viewed his claim for ineffective assistance of counsel in light of the totality of evidence at trial.

{¶2}    After careful review of the record, we find that the trial court abused its discretion in dismissing Gaffin's petition for postconviction relief without a hearing. First, we find that the trial court improperly applied Evid.R. 608(B) to find certain evidence Gaffin provided in his postconviction relief petition inadmissible. In light of all the admissible evidence, we find that Gaffin provided sufficient evidence establishing that substantive grounds for relief exist. Therefore, we find that the trial court abused its discretion in denying Gaffin's postconviction relief petition without a hearing. However, we do find that the trial court provided sufficient findings of fact and conclusions of law to demonstrate how Gaffin's affidavit was not entitled to due deference. Further, we find that the trial court correctly held that res judicata barred a portion of Gaffin's ineffective assistance of counsel claim.

{¶3}    Accordingly, we overrule Gaffin's second assignment of error in full and his third assignment of error in part; we sustain Gaffin's first assignment of error and his third assignment of error in part; and we reverse the trial court's decision denying Gaffin's petition for postconviction relief without hearing. On remand, we order the trial court to conduct an evidentiary hearing on Gaffin's petition for postconviction relief consistent with this opinion.

### I. Facts and Procedural History

{¶4}    These facts are copied verbatim from *State v. Gaffin*, 4th Dist. Adams No. 16CA1027, 2017-Ohio-2935, ¶¶ 4-15 ("*Gaffin I*").

{¶5}    On July 23, 2015, the Adams County Grand Jury returned a seven-count indictment against Gaffin. Gaffin was charged with: (1) three counts of rape in violation of R.C. 2907.02(A)(1)(b), each felonies of the first degree, with specifications; (2) three counts of sexual battery in violation of R.C. 2907.03(A)(5), each felonies of the second degree, with specifications; and (3) one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony

of the second degree. It was alleged that Gaffin sexually assaulted his stepson, R.A., a minor, on two occasions when R.A. was only six or seven years old. Gaffin pleaded not guilty.

{¶6} On June 14, 2016, the case proceeded to trial. The following is a recitation of facts as obtained from the trial testimony.

{¶7} In the summer of 2006, Gaffin moved in with R.A. and his mother in their home in Adams County, Ohio. In early 2008, Gaffin took R.A. to a barn outside their home, forced him to the floor in a prone position, restrained his wrists with cinderblocks, and anally and orally raped the then six-year-old R.A. Gaffin threatened to murder R.A.'s mother and grandparents if R.A. told anyone what had happened, and further threatened R.A. that he would be sent to the Children's Home if he told what had happened. In the next day or two, R.A. went to his sixteen-year-old cousin's house to ride four-wheelers. R.A.'s cousin noticed that blood was leaking from R.A.'s anus after he used the restroom. When asked about the blood, R.A. told his cousin he could not tell what happened, before eventually admitting that Gaffin had hurt him. The cousin reported R.A.'s injuries and statements to her mother. R.A.'s aunt then contacted Adam's County Children's Services. When R.A. refused to repeat the admission, Children Services dropped the report as "unsubstantiated."

{¶8} In December 2008, Gaffin anally raped R.A. again, this time in the living room of their home. Gaffin again threatened to murder R.A.'s mother and grandparents, and repeated his threat that R.A. would end up at an orphanage if he told what had occurred. In 2009, Gaffin married R.A.'s mother and became his stepfather. Gaffin often disciplined R.A. and punished him for being a "mommy's boy" and for playing with stuffed animals or a kitchen set. Gaffin also called R.A. "[q]ueer, puss boy, * * * fagget [sic], mommy's boy, [and] mommy's baby." R.A. indicated that he was scared of Gaffin. R.A. saw Gaffin argue with his mother and put

hands on her and stated that he did not tell anyone of the abuse because of the threats made by Gaffin. In November 2012, Gaffin grabbed R.A.'s throat, dragged him out of the house, and struck him on the head. This caused R.A.'s mother to kick Gaffin out of the house and to initiate divorce proceedings. However, Gaffin continued to come by the house.

{¶9}    In February 2015, R.A. disclosed Gaffin's abuse to his school's counselor. Children's Services was contacted regarding the physical and sexual abuse. R.A. was also taken to the Mayerson Center for evaluation. In March 2015, R.A. was interviewed at the Mayerson Center for purposes of referral and further medical treatment and counseling. At that time, R.A. disclosed the abuse by Gaffin. Eventually, R.A. was diagnosed with PTSD by his counselor John Roflow. At the time of trial and since February 2015, Roflow had met with R.A. around 50 times.

{¶10}   After three days of hearing evidence, the jury retired to deliberate. However, about an hour into deliberations, defense counsel learned that one of the jurors made an improper comment earlier in the day during a break in the case. It was alleged that the juror told a deputy that he had already made up his mind about the case. When defense counsel brought the comment to the trial court's attention, the trial court interrupted deliberations and questioned the juror. The juror admitted to making the improper comment; but he clarified, "I was just thinking about it. I hadn't totally made up my mind yet. That's honest." Tr. at 763 (June 16, 2016). He further stated, "I didn't talk, discuss it with anybody in there at all." *Id.*

{¶11}   Thereafter, the trial court engaged in a lengthy colloquy with the juror in which it inquired whether he was making the appropriate considerations. The juror indicated that he was considering the evidence, the arguments, and the trial court's instructions.

{¶12}   Despite these affirmations, the State requested that the juror be excused; and

defense counsel objected:

> [DEFENSE COUNSEL]: * * * I don't believe that, that he in any way affects,
> based on what I heard it sounded like it was a comment in passing and it's not
> affected his ability to convene with the jurors, hear what they have to say, make
> statements himself and reach a decision based on their deliberations and the
> evidence that's been presented.
>
> [THE PROSECUTOR]: Your Honor, I'll just finish by saying I don't think it
> could be a more clear statement, I have my mind made up.

*Id.* at 768.

{¶13}   Ultimately, the trial court decided to excuse the juror and replace him with an

alternate juror. The colloquy continued:

> [DEFENSE COUNSEL]: Your Honor, just for the record we renew our objection.
>
> The Court: You're objecting?
>
> [DEFENSE COUNSEL]: Yes.
>
> The Court: Okay.
>
> [DEFENSE COUNSEL]: And just to add to that, Your Honor, I think the fear is,
> is ...
>
> The Court: You brought this up, [Counselor]. If you didn't want him off I would
> have thought you wouldn't have wanted to bring it up.
>
> [DEFENSE COUNSEL]: But it's not a fear of ... it's more of a fear of he's already
> been back there deliberating and it's not a matter where we can explain to the jury
> that we [sic] felt ill or ...
>
> The Court: I'll handle that.
>
> [DEFENSE COUNSEL]: Okay.

*Id.* at 768-769.

{¶14}   Then, the trial court brought the jury in and explained the situation:

Ladies and gentleman, I had to stop deliberations and deal with a situation. And the cause of the circumstances, [Juror] Hayslip, it was necessary for him to be excused. And so we've called in [Juror] Adams. * * * So [Juror] Adams is replacing [Juror] Hayslip. Now the deliberation in this case has to occur between all 12. And I know you've been discussing the matter for, oh, an hour plus. You have to stop and start over. * * *

Basically just start over like you haven't done anything and go from there. * * * But it's necessary that a verdict be reached in all of these counts by all 12 and since [Juror] Adams was not involved in the first hour plus the discussions those need to start from the beginning * * *.

*Id*. at 772-773.

{¶15}  Thereafter, the jury retired to deliberate; and forty minutes later, the jury returned a guilty verdict on each count.

{¶16}  On June 17, 2016, Gaffin was sentenced to life without the possibility of parole. His convictions and sentences were journalized by way of entry later that day.

{¶17}  Gaffin filed a timely appeal, in which he set forth the following two assignments of error: (1) that the trial court had erred in removing a juror for misconduct and in failing to conduct a voir dire of the other jurors; and (2) that the cumulative effect of his trial counsel's errors deprived him of his right to effective assistance of counsel. *Gaffin I*, 2017-Ohio-2935 at ¶ 17. After reviewing the record, this Court found that the trial court did not commit plain error in handling the juror misconduct. *Id.* at ¶ 26. Further, we found that Gaffin's claim of ineffective assistance of counsel failed since Gaffin failed to show how he was prejudiced by defense counsel's alleged deficiencies. *Id.* at ¶ 33. Accordingly, we overruled both assignments of error and affirmed the judgment of the trial court. *Id.* at ¶ 39.

{¶18} Thereafter, Gaffin filed a petition for postconviction relief pursuant to R.C. 2953.21 on August 28, 2017. The trial court found no grounds for substantive relief and dismissed Gaffin's petition on November 16, 2017. This appeal followed.

## II. Assignments of Error

{¶19}  On appeal, Gaffin assigns the following errors for our review:

Assignment of Error I:

> The trial court violated Mr. Gaffin's right to due process under the Ohio and
> United States' Constitutions when it dismissed Mr. Gaffin's post-conviction
> petition without conducting an evidentiary hearing.

Assignment of Error II:

> The trial court violated Mr. Gaffin's right to due process under the Ohio and
> United States' Constitutions when it, without any contradictory evidence from the
> State, dismissed Mr. Gaffin's affidavit as self-serving and not credible.

Assignment of Error III:

> The trial court violated Mr. Gaffin's right to due process under the Ohio and
> United States' Constitutions when it denied the petition as the petition stated
> sufficient constitutional claims and was supported by adequate documentary
> evidence to warrant vacation of the conviction and sentence.

## III. Law and Analysis

### A. Standard of Review

{¶20}  The postconviction relief process is a collateral civil attack on a criminal judgment rather than an appeal of the judgment. *State v. Calhoun,* 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999). Postconviction relief is not a constitutional right; instead, it is a narrow remedy that gives the petitioner no more rights than those granted by statute. *Id.* It is a means to resolve constitutional claims that cannot be addressed on direct appeal because the evidence supporting the claims is not contained in the record. *State v. McDougald*, 4th Dist. Scioto No. 16CA3736, 2016-Ohio-5080, ¶ 19-20, citing *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 18.

{¶21}  " '[A] trial court's decision granting or denying a postconviction relief petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court

should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.' " *State v. Smith*, 4th Dist. Scioto No. 16CA3774, 2017-Ohio-7659, ¶ 8, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58; *see also State v. Betts*, 4th Dist. Vinton No. 18CA710, 2018-Ohio-2720, ¶ 12. A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.

### B. R.C. 2953.21

{¶22}   A petitioner seeking postconviction relief is not automatically entitled to an evidentiary hearing. *State v. Black*, 4th Dist. Ross No. 15CA3509, 2016-Ohio-3104, ¶ 9, citing *Calhoun* at 282; *State v. Slagle*, 4th Dist. Highland No. 11CA22, 2012-Ohio-1936, ¶ 13. Rather, before granting a hearing on a petition, the trial court must first determine that substantive grounds for relief exist. *See* R.C. 2953.21(C); *Calhoun* at 282-283. "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights." *In re B.C.S.,* 4th Dist. Washington No. 07CA60, 2008-Ohio-5771, ¶ 11, citing *Calhoun* at 282-283; *see* R.C. 2953.21(A)(1). Furthermore, in order to merit a hearing, the petitioner must show that the claimed "errors resulted in prejudice." *Id.*, quoting *Calhoun* at 283.

### 1. Credibility

{¶23}   In determining whether substantive grounds for relief exist, a court must look at any supporting affidavits filed by the defendant. R.C. 2953.21(C); *In re B.C.S.* at ¶ 12. However, the court does not need to accept such affidavits as true. *Id.*, citing *Calhoun* at 284. A trial court should consider all relevant factors in assessing the credibility of affidavit testimony. *Calhoun* at 284-285. These factors include:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Id.* at 285, citing *State v. Moore*, 99 Ohio Ap.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994).

"Depending on the record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.* at 285.

### 2. Res Judicata

{¶24}  Additionally, res judicata applies to proceedings involving postconviction relief. *Black* at ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996). "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. "Therefore, 'any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings.' " *Black* at ¶ 10, citing *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 8, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

### C. The Trial Court Did Not Err in Discounting the Credibility of Gaffin's Sworn Affidavit

{¶25}  For the sake of clarity, we will address Gaffin's assignments of error out of order.

{¶26} In his second assignment of error, Gaffin contends that the trial court erred in dismissing his affidavit as "self serving" and "not credible as to many of its substantive allegations." Gaffin alleges that the averments the trial court listed are in fact credible. Consequently, Gavin argues that, without a sufficient basis for discounting the credibility of his sworn affidavit, the trial court should have afforded the affidavit due deference. The State argues that the trial court did not abuse its discretion in finding Gaffin's affidavit incredible since the document contained a number of averments that were contradicted by the record.

{¶27} "While a trial court may, in its sound discretion, judge the credibility of affidavits sworn under oath and filed in support of the petition [for postconviction relief], it must give them 'due deference.' " *In re B.C.S.* at ¶ 40, citing *Calhoun* at 284. Moreover, "[a]n affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false." *Calhoun* at 284. Still, the affidavit of an affiant who has no personal interest in the success of a defendant's petition is entitled to greater weight than a defendant's "self-serving" affidavit. *See In re B.C.S.* at ¶ 40; *State v. Kinley*, 136 Ohio App.3d 1, 16, 735 N.E.2d 921 (1999), citing *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983). Further, "[a] trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." *Calhoun* at 285.

{¶28} In the case *sub judice*, we find that the trial court provided sufficient findings of fact and conclusions of law to explain its basis for discrediting Gaffin's affidavit. The trial court identified multiple averments that were contradicted by evidence in the record.

{¶29} Regarding expert witnesses, Gaffin avers in his affidavit that:

23. Mr. Haslam never discussed with me the potential of hiring an expert witness to review and offer an opinion on the forensic interview that was done on R.A.

24. Had he asked me to fund such an expert, I would have done so.

25. Had he explained to me the purpose and impact such testimony would have, I would have insisted he hire an expert.

{¶30}   However, this issue was discussed on the record with Gaffin present. At a pretrial hearing held December 22, 2015, Gaffin's trial counsel stated:

MR. HASLAM: * * * I was served with discovery with an expert and an expert report late Friday afternoon or just after lunchtime on Friday afternoon. We did not anticipate that. I am currently searching for an expert that would provide a report. However, it is the holiday season as I inform the Court that has been difficult. I don't anticipate filing a motion to continue at this time, however if I do, if I am able to retain an expert that report would be under the 21 day deadline. So I just wanted to bring that to the Court's attention. Additionally, if that expert is not available by deposition or to testify by that trial date I would have to file a motion to continue at that time.

During the same hearing, the Court and Gaffin's trial counsel continued to discuss the possibility of hiring an expert witness:

THE COURT: Okay, I guess my question, Mr. Haslam, would be, I mean again obviously you have the right to try your case in the way you feel you need to protect your client. But, you know, if these are the issues that are being testified upon are you, you have… you're looking for an expert to say this doesn't happen, is that what you're saying or again another expert on the same topic?

MR. HASLAM: You Honor, I'm looking for an expert to, to make certain, I may not need to call the expert.

THE COURT: That's what I'm thinking.

MR. HASLAM: Just to make sure that the report I've been provided is accurate as to the opinions that are opined in the report.

{¶31}   After reviewing the transcript, we find that it was reasonable for the trial court to infer that Gaffin was aware of the potential of hiring an expert witness. Moreover, the judge who denied Gaffin's postconviction relief petition also presided at the December 22, 2015 pretrial

hearing. *See Calhoun* at 285 (whether the judge reviewing the postconviction relief petition also presided at the trial is a relevant factor in assessing the credibility of affidavit testimony).

{¶32} Gaffin further avers in his affidavit:

29. I had told Mr. Haslam he had a car title to the White Chevy Impala described by R.A. in his testimony. The reason it was important was I did not purchase this car until two years after R.A. described seeing it. I had given him the title during our brief meeting at the Dairy Queen on [R]oute 50.

30. R.A. had told the jury his mother was working at the Brown County Hospital at the time of the attacks. However I told Mr. Haslam during the trial that this was not true. She did not start there until 2010.

31. At no time did I witness Mr. Haslam do anything with any of the documents, pictures, or videos given him. He never used any of the information in cross examining any witnesses. * * *

{¶33} The trial court, in its findings of fact, also found these averments to be false. The record reflects that trial counsel did use the information Gaffin provided about the White Chevy Impala and R.A.'s mother's employment at Brown County Hospital for impeachment purposes. Tr. at 365-368, 535-536 (June 15, 2015); Tr. at 584-586, 633-634, 732-734 (June 16, 2015).

{¶34} Additionally, a number of Gaffin's averments rely on hearsay, a relevant factor in assessing the credibility of affidavit testimony. *See Calhoun* at 285. This includes Gaffin's claim that trial counsel contacted Gaffin to represent him.

{¶35} We find that the trial court stated sufficient findings of facts and conclusions of law in accordance with *Calhoun*. The trial court adequately explained its basis for discrediting Gaffin's affidavit by identifying averments contradicted by the record and by identifying averments that relied on hearsay. *See Calhoun* at 285. Additionally, the judge who denied Gaffin's postconviction relief petition also presided at the trial. *Id.* In *Calhoun*, the Court found that "one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.* Therefore, we find that

the trial court did not abuse its discretion in discounting the credibility of Gaffin's sworn

affidavit.

{¶36}  Accordingly, we overrule Gaffin's second assignment of error.

### D. The Trial Court Did Not Err in Finding that Res Judicata Barred a Portion of Gaffin's Petition for Postconviction Relief

{¶37}  In his third assignment of error, Gaffin contends that the trial court erred in

finding that res judicata barred a portion of his ineffective assistance of counsel claim. According

to Gaffin, the court should have evaluated trial counsel's performance in light of the totality of

the evidence at trial, including whether the verdict was weakly supported by the record. The

State did not refute Gaffin's argument.

{¶38}  The doctrine of res judicata bars claims that the defendant raised or could have

raised on direct appeal. *State v. Literal*, 4th Dist. Scioto No. 12CA3479, 2012-Ohio-6298, ¶ 6; *In*

*re B.C.S.*, 2008-Ohio-5771, ¶ 14. " '[T]he doctrine serves to preclude a defendant who has had

his day in court from seeking a second on that same issue. In doing so, res judicata promotes the

principles of finality and judicial economy by preventing endless re-litigation of an issue on

which a defendant has already received a full and fair opportunity to be heard.' " *Literal* at ¶ 6,

quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18. In *In re*

*B.C.S.*, we held that res judicata did not bar the appellant from bringing an ineffective assistance

of counsel claim in his postconviction petition that presented a different issue than the ineffective

assistance claim raised on direct appeal. *In re B.C.S.* at ¶ 36.

{¶39}  On direct appeal, Gaffin alleged that his trial counsel's prior representation of

R.A.'s mother during her divorce from R.A.'s father created a conflict of interest that violated

Gaffin's right to effective assistance of counsel. In *Gaffin I*, we found that Gaffin failed to

establish a claim of ineffective assistance of counsel after failing to show how he was prejudiced by defense counsel's alleged deficiencies; therefore, we did not need to consider whether defense counsel's performance was deficient. *Gaffin I*, 2017-Ohio-2935 at ¶ 35. Then, in his petition for postconviction relief, Gaffin argued once again that trial counsel's prior representation of R.A.'s mother created a conflict of interest that violated his right to effective assistance. The trial court found that this portion of Gaffin's petition for postconviction relief was barred by res judicata.

{¶40} Here, Gaffin argues that the trial court should have evaluated trial counsel's performance in light of the totality of the evidence at trial, including whether the verdict was weakly supported by the record. According to Gaffin, the trial court improperly dismissed his ineffective assistance of counsel claim out-of-hand as an "against the manifest weight of the evidence" argument barred by res judicata.

{¶41} Gaffin mischaracterizes the trial court's holding. We find that the trial court correctly held that res judicata barred a portion of Gaffin's ineffective assistance of counsel claim. On direct appeal, Gaffin failed to show how the alleged conflict of interest resulted in ineffective assistance of counsel. He is not entitled to a second bite at the apple.

{¶42} Additionally, we find that the trial court properly held that Gaffin's argument that the actual evidence of his guilt was weak, to the extent that this was an argument that the verdicts were against the manifest weight of the evidence, was barred by res judicata. *See State v. Kelly*, 4th Dist. Scioto No. 14CA3637, 2014-Ohio-5840, ¶ 17, citing *State v. Damron*, 4th Dist. Ross No. 10CA3158, 2012-Ohio-6459, ¶ 21. This holding did not prevent the trial court from considering how generously the record supported the verdict when evaluating Gaffin's claim of ineffective assistance of counsel. *See Washington v. Strickland*, 466 U.S. 668, 696, 104 S.Ct.

2052, 80 L.Ed.3d 674 (1984) ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.")

{¶43} Accordingly, we overrule this portion of Gaffin's third assignment of error.

**E. The Trial Court Did Err in Finding Certain Affidavits Partially Inadmissible Under Evid.R. 608(B); Certain Statements From Affidavits Are Admissible Under Evid.R. 613(C)**

{¶44} In his third assignment of error, Gaffin also contends that the trial court erred in finding that, under Evid.R. 608(B), witnesses whose affidavits referred to specific instances of conduct would be prohibited from testifying regarding such acts. Gaffin alleges that the trial court applied the wrong rule of evidence and that the testimony is permissible under Evid.R. 613(C).

{¶45} The State argues that the trial court applied the correct rule of evidence, and even if it did not, Gaffin cannot demonstrate prejudice because the testimony was largely inadmissible for other reasons, which the trial court outlined.

{¶46} Evid.R. 608 provides one method by which a party may impeach a witness. Evid.R. 608(B), in particular, states:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In the context of impeachment, "extrinsic evidence" is defined in the Staff Notes to Evid.R. 616(C) as "evidence introduced through the testimony of other witnesses." *See* 1 McCormick, Evidence, Section 36, at 118 (4th Ed.1992) ("Extrinsic evidence, that is, the production of

attacking witnesses * * * is sharply narrowed for obvious reasons of economy of time and

attention.").

{¶47}  In *State v. Leuin*, the Supreme Court of Ohio wrote with regard to Evid.R. 608(B):

> From the foregoing rule [Evid.R. 608(B)], it is apparent that specific instances of conduct, relating only to the credibility of a witness, may not be established by extrinsic evidence. If this were not the rule, trials could potentially become bogged down in an interminable parade of witnesses called to testify as to specific instances of conduct of a prior witness in an attempt to contradict the prior witnesses' testimony on a purely collateral matter. * * *

> That is not to say, however that the state was prohibited from questioning [a witness] on cross-examination as to these specific instances of conduct. Evid.R. 608(B) allows, in the court's discretion, cross-examination on specific instances of conduct "if clearly probative of truthfulness or untruthfulness." Nevertheless, if the answers received on cross-examination do not satisfy the examiner, it is said that the examiner is bound by or "stuck" with the responses. See, *e.g.*, *State v. Gardner* (1979), 59 Ohio St. 2d 14, 19 [391 N.E.2d 337].

*State v. Leuin*, 11 Ohio St.3d 172, 174, 464 N.E.2d 552 (1984); *see State v. Conley*, 4th Dist.

Pike No. 08CA784, 2009-Ohio-1848, ¶ 20-21.

{¶48}  Another method by which a party may impeach a witness can be found in Evid.R.

613. Under Evid.R. 613(C):

> During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach. If offered for the sole purpose of impeaching the witness's testimony, extrinsic evidence of the prior inconsistent conduct is admissible under the same circumstances as provided for prior inconsistent statements by Evid.R. 613(B)(2).

When read in conjunction with Evid. R. 613(C), Evid.R. 613(B)(2) requires that the subject

matter of the witness's conduct be one of the following:

> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

> (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of
impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B)(2). *Cf. Nolan v. Conseco Health Ins. Co.*, 7th Dist. Jefferson No. 07 JE 30 and 07

JE 31, 2008-Ohio-332, ¶ 162-163; *State v. Bowman*, 144 Ohio App.3d 179, 196-187, 759 N.E.2d

856 (12th Dist.2001); *Basset v. Apex Int'l Corp.*, 1st Dist. Hamilton No. C-000384, 2001 WL

903460 at *7 (Aug. 10, 2001).

{¶49}   Here, the trial court listed eight witnesses whose affidavits contained statements

that referred to specific instances of conduct by R.A. or his mother. These were the sworn

affidavits of Tyler Cantrell, Jimmy Vaughn, Mike Decker, Paula Gaffin, Brian Rau, Jeffrey

Bowling, Jason Mallott, and Josie Frances. According to the trial court, none of these witnesses

would have been permitted to testify as to such specific instances of conduct under Evid.R.

608(B). Gaffin argues, however, that the witnesses' proposed testimony would have been

permitted under Evid.R. 613(C) to impeach R.A.'s or his mother's testimony.

{¶50}   To be thorough, we will review each affidavit individually.

{¶51}   It is worth noting, however, that the trial court often listed multiple reasons why a

specific instance of conduct in one of the affidavits would have been inadmissible. We need not

examine whether the trial court properly applied Evid.R. 608(B) or whether Evid.R. 613(C) is

applicable in instances where the trial court properly held that proposed testimony was

inadmissible under another rule of evidence. In these instances, the evidence would still have

been inadmissible even if the trial court erroneously applied Evid.R. 608(B). *See State v.*

*Marcum*, 4th Dist. Hocking No. 14CA13, 2014-Ohio5373, ¶ 27, citing *Stammco, L.L.C. v.*

*United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, 994 N.E.2d 408, ¶ 51 ("[A]

reviewing court should not reverse a correct judgment merely because it is based on erroneous

reasons[.]").

**i. Tyler Cantrell**

{¶52}  Tyler Cantrell ("Cantrell") was Gaffin's original trial attorney. In his affidavit, Cantrell avers that he reviewed a video of R.A. in a tree stand sleeping. He says that he was led to believe that the video was recorded on a trip approved by Brianna after the alleged assaults were committed and after the break up of her marriage to Gaffin. According to Cantrell, the video demonstrated how comfortable R.A. was being alone with Gaffin and how comfortable R.A.'s mother was leaving R.A. alone with Gaffin.

{¶53}  The trial court found that Cantrell's statement was inadmissible because it was based upon statements from others that were clearly hearsay. Additionally, the trial court held that this portion of Cantrell's statement would not have been admissible under Evid.R. 608(B).

{¶54}  We find that the trial court properly found that this portion of Cantrell's affidavit was inadmissible because it relied on hearsay. Therefore, we need not address whether the statement was in fact inadmissible under Evid.R. 608(B) or whether it was otherwise admissible under Evid.R. 613(C).

**ii. Jimmy Vaughn**

{¶55}  Jimmy Vaughn ("Vaughn") avers in his affidavit that, in 2012, he had Thanksgiving dinner with Gaffin and R.A. According to Vaughn, R.A.'s mother was too drunk to join them.

{¶56}  The trial court noted that defense counsel did not offer any evidence that R.A.'s mother was an alcoholic or that her drinking had any effect upon her memory. *See* Tr. at 242 (June 14, 2016). Therefore, the trial court found that Vaughn's statement regarding R.A.'s mother's intoxication would have been inadmissible under Evid.R. 608(B).

{¶57} This Court finds differently. Evid.R. 616(B) provides that: "A defect of capacity, ability, or opportunity to observe, remember or relate may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Specifically, "the credibility of testimony can be attacked through evidence of a witness's intoxication at the time of the matter about which the witness seeks to testify." *Kenny v Fealko*, 75 Ohio App.3d 47, 51, 598 N.E.2d 861 (11th Dist.1991), citing *Johnson v. Knipp*, 36 Ohio App.2d 218, 304 N.E.2d 914 (9th Dist. 1973), and *State v. Boggs*, 4th Dist. Adams No. CA 494, 1991 WL 13735 (Jan. 24, 1991).

{¶58} R.A.'s mother testified regarding the events that occurred on Thanksgiving Day 2012, which she stated triggered the end of her marriage to Gaffin. Tr. at 340–41 (June 15, 2016); *see* Tr. at 623 (June 16, 2016) (in which Gaffin testifies that he left the day after Thanksgiving 2012). Vaughn could have been called to contest R.A.'s mother's ability to remember the events of that day. Therefore, we find that this portion of Vaughn's statement was admissible under Evid.R. 613(C) and Evid.R. 616(B).

### iii. Mike Decker

{¶59} Mike Decker ("Decker") avers in his affidavit that he lived with R.A.'s mother, R.A., and Gaffin for two months in 2012. Decker says that he witnessed R.A.'s mother become increasingly dependent on alcohol. Additionally, Decker recalled traveling to Kentucky for a turkey shoot with Gaffin and R.A. According to Decker, R.A. was eager to attend the shoot and did not express any reservation about being with Gaffin.

{¶60} Again, the trial court held that the statement regarding R.A.'s mother's intoxication would have been inadmissible under Evid.R. 608(B). The trial court also held that Decker's statement about the hunting trip, which occurred at least three years after the last sexual assault occurred in December 2008, was remote and was inadmissible under Evid.R. 608(B).

{¶61} Extrinsic evidence that serves no purpose other than to attack the credibility of a witness is inadmissible under Evid.R. 608(B) and Evid.R. 613(C). Therefore, we find that the trial court properly found that Decker's statement about R.A.'s mother's drinking habits was inadmissible under Evid.R. 608(B). Regarding Decker's statement about the hunting trip, we find that the trial court did not abuse its discretion in finding this portion of Decker's affidavit inadmissible for being remote. *See In re Mick*, 4th Dist. Washington No. 05CA23, 2005-Ohio-4951, ¶ 17 ("Even relevant evidence may be excluded on the grounds of remoteness when the evidence has little probative value."), citing Evid.R. 403(B), *Hamm v. McCarty*, 61 Ohio App.3d 23, 627, 573 N.E.2d 722 (9th Dist.1988). Therefore, we need not address whether the statement was in fact inadmissible under Evid.R. 608(B) or whether it was otherwise admissible under Evid.R. 613(C).

### iv. Paula Gaffin

{¶62} Paula Gaffin, Gaffin's ex-wife, avers in her affidavit that she is aware of the fact that David Shivener ("Shivener") does not like Gaffin.

{¶63} Because Shivener never testified in the case and any bias he had against Gaffin was not at issue, the trial court held that Paul Gaffin's statement about Shivener was irrelevant and therefore inadmissible. The trial court also found that her statement would not have been admissible under Evid.R. 608(B).

{¶64} We find that the trial court properly found that this portion of Paula Gaffin's affidavit was irrelevant and therefore inadmissible. Consequently, we need not address whether the statement was in fact inadmissible under Evid.R. 608(B) or whether it was otherwise admissible under Evid.R. 613(C).

### v. Brian Rau

{¶65} Brian Rau ("Rau"), the principal of R.A.'s elementary school, states in his affidavit that R.A. lied about two accusations made against him at school: (1) that he went through someone's purse; and (2) that he called someone a name. Both incidents occurred in October 2012.

{¶66} Defense counsel did try to call Rau to the stand during trial. However, the trial court found Rau's testimony inadmissible because it was specific to incidents and contacts. Tr. at 544 (June 15, 2016). Concerning Rau's affidavit, the trial court noted that witnesses are not permitted to offer an opinion as to whether a witness was lying in a particular instance. The trial court held that his statement would not have been admissible under Evid.R. 608(B).

{¶67} Rau's statement serves no purpose other than to attack R.A.'s credibility. Therefore, we find that the trial court correctly held that Rau's statement was inadmissible under Evid.R. 608(B). Since Rau only avers to two specific instances of dishonesty and does not provide an opinion about R.A.'s character for truthfulness, we cannot find that this statement would have been admissible under Evid.R. 613(C) and Evid.R. 608(A).

**vi. Jeffrey Bowling**

{¶68} Jeffrey Bowling ("Bowling"), the former Chief of Police of the Manchester Police Department, avers in his affidavit that he was called to R.A.'s mother's home in or around the fall of 2014 because R.A. was missing. According to Bowling, he later found R.A. with Gaffin, and R.A. said that he wanted to stay with Gaffin.

{¶69} The trial court found that the testimony concerning the instance in 2014 where R.A. wanted to stay with Gaffin would have been inadmissible under Evid.R. 608(B). The trial court also implies that the testimony might be inadmissible for being remote in time.

{¶70}   We find that Bowling's statement was permissible under Evid.R. 613(C) and

Evid.R. 613(B)(2)(a). Evid.R. 613 permits the admission of "extrinsic evidence of [a witness's]

prior inconsistent conduct" if "[t]he subject matter of the statement is * * * [a] fact that is of

consequence to the determination of the action other than the credibility of a witness[.]" Evid.R.

613(C); Evid.R. 613(B)(2)(a). R.A. testified that he was and still is afraid of Gaffin:

Q. Were you scared of [Gaffin]?

A. Yeah

Q. Are you scared of him today?

A. Oh, yeah.

Tr. at 500 (June 15, 2016). The State used R.A.'s fear to explain his delay in reporting the

alleged sexual abuse. Because R.A.'s delayed reporting is a fact of consequence to the action, the

subject matter of Bowling's statement does more than attack R.A.'s credibility. Therefore, we

find that Bowling's statement would have been admissible under Evid. R. 613(C) and Evid R.

613(B)(2)(a).

{¶71}   Further, for the sake of a complete analysis, we find that the evidence is not

remote. "Evidence, which is otherwise competent, may relate to facts too remote in point of time

to be admissible[.]" *State v. Hostetter*, 7th Dist. Columbiana No. 91-C-31, 1992 Ohio App.

LEXIS 4088, *4 (Aug 4, 1992), quoting *State v. Wheeler*, 7th Dist. Noble No. 186, 1984 Ohio

App. LEXIS 10901, *2 (Sep. 20 1984); *see Wheatley v. Marietta College*, 2016-Ohio-949, 48

N.E.2d 587, ¶ 73 (4th Dist.). Although the incident Bowling refers to occurred five years after

the last sexual assault, no rational trial court could find this evidence remote in light of the

victim's delayed reporting. *See, e.g.*, *State v. Wright*, 4th Dist. Washington No. 00CA39, 2001

Ohio App. LEXIS 5699, *47 (Dec. 6, 2001) (stating that a three-year time frame was not too

remote in time to have probative value), citing *State v. Blankenship*, 9th Dist. Summit No. C-602, C-603, 1993 Ohio App. LEXIS 4393 (Sept. 1, 1993); *see also State v. Blankenship*, 9th Dist. Summit No. 16019, 1993 WL 329962, *16 (Sept. 1, 1993) (stating that an eight-year time frame was not too remote so as to be of no probative value).

### vii. Jason Mallott

{¶72}   Jason Mallott ("Mallott"), a former police officer with the Manchester Police Department, avers in his affidavit that he responded to a domestic violence call at R.A.'s mother's home in 2012. Mallott states that Gaffin, R.A., and R.A.'s mother were present when he arrived. According to Mallott, R.A.'s mother was intoxicated and said that she would do whatever it took to get Gaffin arrested. Further, Mallott states that R.A. said that he wanted to go with Gaffin.

{¶73}   The trial court found that Mallott's statement regarding R.A.'s mother's intoxication would have been inadmissible under Evid.R. 608(B). The trial court also found that Mallott's testimony concerning the incident in 2012 where R.A. wanted to stay with Gaffin would have been inadmissible under Evid.R. 208(B). Again, the trial court implied that this statement might be inadmissible for being remote.

{¶74}   Again, extrinsic evidence that serves no purpose other than to attack the credibility of a witness is inadmissible under Evid.R. 608(B) and Evid.R. 613(C). Therefore, this Court finds that the trial court properly applied Evid.R. 608(B) to Mallott's statement about R.A.'s mother's intoxication. Using the same analysis that we used to review the admissibility of Bowling's statement, we find that Mallott's statement would have been admissible under Evid. R. 613(C) and Evid R. 613(B)(2)(a).

### viii. Josie Frances

{¶75}   Josie Frances ("Frances"), Paula Gaffin's mother, avers in her affidavit that she has seen R.A. from time to time. Frances says that on one occasion, R.A. told her that Gaffin had sexually assaulted him. Since then, Frances states that she has had a number of conversations with R.A. about what Gaffin did to him. According to Frances, R.A. never told the same story twice.

{¶76}   The trial court noted that Frances failed to state what R.A. told her or when these conversations occurred. Additionally, Frances failed to offer an opinion as to R.A.'s truthfulness. The trial court held that her statement would have been inadmissible under Evid.R. 608(B).

{¶77}   Frances fails to demonstrate how R.A.'s statements to her were inconsistent with his testimony. Therefore, we find that Frances's proposed testimony does not establish that R.A. made a prior inconsistent statement. Consequently, admission of this statement would only serve to undermine R.A.'s credibility. Accordingly, we find that the trial court correctly held that Frances's statement was inadmissible under Evid.R. 608(B).

{¶78}   After reviewing the eight listed affidavits, we find that the trial court erred in finding that certain portions of specific affidavits would have been inadmissible under Evid.R. 608(B). Specifically, we find that the trial court improperly found that statements made in Decker's, Bowling's, and Mallott's affidavits were inadmissible under Evid.R. 608(B).

{¶79}   Accordingly, we find that this portion of Gaffin's third assignment of error is sustained in part and overruled in part.

**F. The Trial Court Erred in Dismissing Gaffin's Petition for Postconviction Relief Without an Evidentiary Hearing**

{¶80}   In his first assignment of error, Gaffin alleges that the trial court erred in dismissing his postconviction petition without an evidentiary hearing. Gaffin argues that he

produced sufficient credible evidence to demonstrate that he was denied his constitutional right to ineffective assistance of counsel. According to Gaffin, the information contained in the affidavits, when considered with the full record, establish a deficiency in his trial counsel's performance that led to an unjust result at trial.

{¶81} The State alleges that trial counsel's performance did not fall below an objective standard of reasonableness. Additionally, the State argues that Gaffin was not entitled to an evidentiary hearing because he failed to demonstrate prejudice as a result of his trial counsel's alleged deficiencies.

{¶82} As previously stated, a petitioner seeking postconviction relief is not automatically entitled to an evidentiary hearing. *Black*, 2016-Ohio-3104 at ¶ 9, citing *Calhoun* at 282; *Slagle*, 2012-Ohio-1936 at ¶ 13. Rather, before granting a hearing on a petition, the trial court must first determine that substantive grounds for relief exist. *See* R.C. 2953.21(C); *Calhoun* at 282-283. "Substantive grounds for relief exist and a hearing is warranted if the petitioner produces sufficient credible evidence that demonstrates the petitioner suffered a violation of the petitioner's constitutional rights." *In re B.C.S.*, 2008-Ohio-5771 at ¶ 11, citing *Calhoun* at 282-283; *see* R.C. 2953.21(A)(1). Furthermore, in order to merit a hearing, the petitioner must show that the claimed "errors resulted in prejudice." *Id.,* quoting *Calhoun* at 283.

{¶83} Criminal defendants have a right to counsel, including a right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn.14. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Accord State v. Issa*, 93 Ohio St.3d

49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶84} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Quotation omitted.) *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

{¶85} "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." *State v. Walters*, 4th Dist. Washington Nos. 13CA33 and 13CA36, 2014-Ohio-4966, ¶ 24, citing *State v. White,* 82 Ohio St.3d 15, 23, 693 N.E.2d 772 (1998). "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively

demonstrated." *Id*. "There are countless ways to provide effective assistance in any given case; therefore, judicial scrutiny of counsel's performance must be highly deferential." *Id.*

{¶86}   Gaffin argues that trial counsel would have had the opportunity to impeach the testimony of the State's key witnesses and to offer a viable reason for R.A. to lie, had he investigated the witnesses that Gaffin suggested. In support of his argument, Gaffin relies on *Cosio v. United States*, 927 A.2d 1106 (D.C. 2007). In that case, appellant was charged with the sexual abuse of his stepsister, A.A., which occurred from January 1994 to November 1997. *Id*. at 1110. In appellant's motion for a new trial, he argued that trial counsel had been ineffective in failing to discover and present testimony that would have discredited A.A.'s testimony. *Id*. at 1116. Five of appellant's former co-workers testified that, during the period of the alleged sexual assault, they observed appellant and A.A. to have an affectionate and normal brother-sister relationship. *Id.* The court found that, since the defense "lack[ed] evidence that A.A. had a powerful motive to lie about appellant, counsel had all the more need to impeach her with the co-workers' evidence that she had shown affection for her alleged abuser and persecutor." *Id.* at 1134. Since this was a "bare-bones" case that rested almost entirely on A.A.'s credibility, the court found there was "a reasonable probability that the jury would have returned a different verdict had it heard the co-workers' testimony." *Id.*

{¶87}   We are persuaded by the court's rationale. The case sub judice also rests almost entirely on the alleged victim's credibility. Having found that the trial court improperly found portions of certain affidavits inadmissible under Evid.R. 608(B), we review the trial court's decision to deny Gaffin's petition for postconviction relief without a hearing in light of the admissible evidence provided. Again, we will not overrule the trial court's decision absent an abuse of discretion. *State v. Smith*, 4th Dist. Scioto No. 16CA3774, 2017-Ohio-7659, ¶ 8.

{¶88}   After reviewing the evidence, we find that Gaffin established that he received constitutionally ineffective assistance of counsel. First, Gaffin showed that his trial counsel's performance fell below an objective level of reasonable representation. Although trial counsel's decision not to call a witness may be considered trial strategy, "[a] total abdication of duty should never be viewed as permissible trial strategy." *State v. Johnson*, 24 Ohio St.3d 87, 494 N.E.2d 1061 (1986). Here, Gaffin's trial counsel not only failed to call a majority of the witnesses he subpoenaed, the affidavits show that he failed to interview at nearly ten of those individuals. *See State v. Erwin*, 5th Dist. Licking No. 95 CA 82, 1996 Ohio App. LEXIS 2936, *5 (June 10, 1996) ("Appellant is entitled to a hearing on this issue in order to further develop the substance of said witnesses' testimony and demonstrate how the failure to call said witnesses at trial was prejudicial."). Second, in light of the admissible evidence Gaffin provided, we find that there is a reasonable probability that the jury would have returned a different verdict. Had the jury heard the witnesses' testimony, especially that of the two officers from the Manchester Police Department, it is reasonably likely that the outcome of the trial would have been different. Because Gaffin provided sufficient evidence in his petition for postconviction relief to satisfy both prongs of an ineffective assistance of counsel claim, we find that any rational trial court would have found substantive grounds for relief existed and granted an evidentiary hearing. Therefore, we find that the trial court abused its discretion in denying Gaffin's postconviction relief petition without a hearing.

{¶89}   Accordingly, we sustain Gaffin's first assignment of error.

### V. Conclusion

{¶90}   Based on the foregoing reasons, we find that the trial court abused its discretion in denying Gaffin's petition for postconviction relief without a hearing. Having sustained Gaffin's

first assignment of error, overruled his second assignment of error, and overruled in part and sustained in part his third assignment of error, we remand the matter to the trial court to conduct an evidentiary hearing on Gaffin's petition for postconviction relief consistent with this opinion.

JUDGMENT AFFIRMED IN PART, DISMISSED IN PART, AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART, DISMISSED IN PART, AND CAUSE REMANDED. Appellee shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellee to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellee to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.


For the Court,


By: _____
        Marie Hoover, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**